**FILED**

OCT 2 1 2005

NANCY MAYER-WHITTINGTON, CLERK
U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DR. ABU MUHAMMED,<br>    Detainee,<br>    Guantánamo Bay Naval Station<br>    Guantánamo Bay, Cuba;<br><br>JAMAAL KIYEMBA,<br>    as Next Friend of DR. ABU<br>MUHAMMED;<br><br>    *Petitioners,*<br><br>v.<br><br>GEORGE W. BUSH,<br>    President of the United States<br>    The White House<br>    1600 Pennsylvania Ave., N.W.<br>    Washington, D.C. 20500;<br><br>DONALD RUMSFELD,<br>    Secretary, United States<br>    Department of Defense<br>    1000 Defense Pentagon<br>    Washington, D.C. 20301-1000;<br><br>ARMY BRIG. GEN. JAY HOOD,<br>    Commander, Joint Task Force - GTMO<br>    JTF-GTMO<br>    APO AE 09360; and<br><br>ARMY COL. MIKE BUMGARNER,<br>    Commander, Joint Detention<br>    Operations Group - JTF-GTMO,<br>    JTF-GTMO<br>    APO AE 09360,<br><br>    *Respondents.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

CIVIL ACTION NO.

CASE NUMBER  1:05CV02087

JUDGE: Rosemary M. Collyer

DECK TYPE: Habeas Corpus/2255

DATE STAMP: 10/21/2005

## PETITION FOR WRIT OF HABEAS CORPUS

# TABLE OF CONTENTS

I.    **Jurisdiction and Venue**

II.   **Parties**

III.  **Statement of Facts and Bases for Claims**

    A.    Facts Concerning Petitioner Muhammed

    B.    The Joint Resolution

    C.    Military Order No. 1

    D.    Petitioner Muhammed's Continued Detention Violates 2(a) of the Military Order

    E.    The Conditions of Detention at Guantanamo Violate Section 3(b) of the Military Order

    F.    The Conditions of Detention at Guantanamo, Including the Treat of Rendition, Violation H.R. 1268

IV.   **Causes of Action**

    1.    The Military Order is Invalid

    2.    Violation of the Military Order

    3.    Violation of Common Law Due Process and Due Process clause of the Fifth Amendment of the Constitution of the United States

    4.    Violation of Geneva Conventions:  Arbitrary Denial of Due Process and Inhumane Treatment

    5.    Violation of International Humanitarian and Human Rights Law: Arbitrary Denial of Due Process and Inhumane Treatment

    6.    Violation of Alien Tort Statute and the Military Order:  Arbitrary Arrest and Prolonged Arbitrary Detention (Inhumane Treatment)

    7.    Violation of Article II of the United States Constitution:  Unlawful Detention

    8.    Violation of the APA and the Military Order;  Arbitrary and Capricious Unlawful Detention

    9.    Violation of the APA and the Military Order:  Arbitrary and Capricious Denial of Due Process

    10.   Violation of the Right to Counsel and Access to the Courts

    11.   Convention Against Torture and Convention Relating to the Status of Refugees and the Military Order:  Rendition

V.    **Prayer for Relief**

## PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Dr. Abu Muhammed ("Muhammed") seeks a Writ of Habeas Corpus. A citizen of Algeria, he acts on his own behalf and through his Next Friend, Petitioner Jamaal Kiyemba, his co-detainee and friend. Muhammed is a civilian wrongly classified as an "enemy combatant" by the President of the United States, and is being held virtually incommunicado in military custody at the United States Naval Station at Guantánamo Bay, Cuba ("Guantánamo Bay"), without basis, without charge, without access to counsel, and without being afforded any fair process by which he might challenge his detention. Petitioner Muhammed is being held by color and authority of the Executive, and in violation of the Constitution, laws and treaties of the United States as well as customary international law. Accordingly, this Court should issue a Writ of Habeas Corpus compelling Respondents either to release Petitioner Muhammed or to establish in this Court a lawful basis for Petitioner Muhammed's detention and provide related injunctive and declaratory relief.

Pursuant to the President's authority as Commander-in-Chief, under the laws and usages of war, or under the November 13, 2001 Military Order, Respondents George W. Bush, President of the United States, Donald H. Rumsfeld, U.S. Secretary of Defense, Army Brigadier General Jay Hood, Commander of Joint Task Force-GTMO, and Army Colonel Mike Bumgarner, Commander, Joint Detention Operations Group, Joint Task Force-GTMO, are either ultimately responsible for or have been charged with the responsibility of maintaining the custody and control of the detained Petitioner at Guantánamo Bay.

## SECTION I
## JURISDICTION AND VENUE

1.    Petitioners invoke the Court's jurisdiction under 28 U.S.C. §§ 2241(c)(1),

(c)(3) and 2242. Petitioners further invoke this Court's jurisdiction under: 28 U.S.C. §§

1331, 1350, 1651, 2201, and 2202; 5 U.S.C. § 702; Articles I and II of the United States

Constitution; and the Fifth and Sixth Amendments to the United States Constitution.

Petitioners also rely on Rule 57, Fed.R.Civ.P.

2.    This Court is empowered under 28 U.S.C. § 2241 to grant this Writ of

Habeas Corpus, and to entertain the Petition filed by Petitioner Jamaal Kiyemba, the

Next Friend of Petitioner Muhammed, under 28 U.S.C. § 2242.

3.    This Court is further empowered to declare the rights and other legal

relations of the parties herein by 28 U.S.C. § 2201, and to effectuate and enforce

declaratory relief by all necessary and proper means by 28 U.S.C. § 2202, as this case

involves an actual controversy within the Court's jurisdiction, and to issue all writs

necessary or appropriate in aid of its jurisdiction by 28 U.S.C. § 1651.

4.    Venue is proper in the District of Columbia pursuant to 28 U.S.C. § 1391

because at least one of the respondents resides in the District, a substantial part of the

events giving rise to the claim occurred in the District, at least one respondent may be

found in the District, and all respondents are either officers or employees of the United

States, or agencies thereof, and acting in their official capacities.

4

## SECTION II
## PARTIES

5.    Petitioner Muhammed is an Algerian citizen who is presently incarcerated at Guantánamo Bay and held in Respondents' unlawful custody and control. *See* Exhibit A Affidavit of Jamaal Kiyemba at ¶1.

6.    Petitioner Jamaal Kiyemba is Petitioner Muhammed's co-detainee and friend. *Id.* at ¶1 and attachment. He is an Algerian citizen. Because his co-detainee and friend has been denied access to legal counsel and to the courts of the United States, Jamaal Kiyemba acts as his Next Friend, pursuant to 28 U.S.C. §§ 2241 and 2242. *Id.* at ¶1.

7.    Respondent George W. Bush is the President of the United States and Commander-in-Chief of the United States Military. Petitioner Muhammed is being detained pursuant to President Bush's authority as Commander-in-Chief, under the laws and usages of war or, alternatively, pursuant to the Military Order of November 13, 2001: "Detention, Treatment, and Trial of Certain Non-Citizens in the War Against Terrorism," 66 Fed. Reg. 57,833 (November 13, 2001) ("Military Order"). President Bush is responsible for Petitioner Muhammed's unlawful detention and is sued in his official capacity.

8.    Respondent Donald Rumsfeld is the Secretary of the United States Department of Defense. Pursuant to the President's authority as Commander-in-Chief, under the laws and usages of war or, alternatively, pursuant to Sec. 3 of the Military Order, Respondent Rumsfeld has been charged with the responsibility of maintaining the custody and control of Petitioner Muhammed. He is sued in his official capacity.

9.     Respondent Brigadier General Jay Hood is the Commander of Joint Task Force - GTMO, the task force running the detention operation at Guantánamo Bay.  He has supervisory responsibility for Petitioner Muhammed and is sued in his official capacity.

10.     Respondent Army Colonel Mike Bumgarner is the Commander of the Joint Detention Operations Group and the Joint Task Force - GTMO detention camps, including the U.S. facility where Petitioner Muhammed is presently held.  He is the immediate custodian responsible for Petitioner Muhammed's detention and is sued in his official capacity.

11.     Respondents are directly responsible for any activities undertaken by or under the supervision of any agents or employees acting on their behalf, or of agents or employees of private contractors ("contractor employees") with whom any agency under Respondents' authority or supervision has contracted for the provision of services at Guantánamo Bay.  All references to Respondents' actions in this Petition include activities performed by Respondents' agents or employees, other government agents or employees or contractor employees.

### SECTION III
### STATEMENT OF FACTS AND BASES FOR CLAIMS

#### § III(A).  FACTS CONCERNING PETITIONER MUHAMMED

12.     Petitioner Muhammed has been and continues to be detained in U.S. custody at the U.S. Naval Base at Guantánamo Bay.

13.     Guantánamo Bay is a territory over which the United States exercises exclusive jurisdiction and control.

6

14.    Upon information and belief, Petitioner Muhammed desires to pursue in United States courts every available legal challenge to the lawfulness of his detention. Petitioner Muhammed has been denied access to counsel by Respondents, accordingly, this and subsequent allegations of fact that pertain to Petitioner Muhammed are based on information and belief.

15.    Upon information and belief, Petitioner Muhammed is not, nor has he ever been, an enemy alien, lawful or unlawful belligerent, or combatant of any kind under any definition adopted by the government in any civil or military proceeding.

16.    Upon information and belief, Petitioner Muhammed has never been engaged in any combat against the United States and was never part of any forces hostile to the United States.

17.    Upon information and belief, Petitioner Muhammed is not, nor has he ever been, an individual who was part of or supporting Taliban forces or partners.

18.    Upon information and belief, Petitioner Muhammed is not, nor has he ever been, an individual who was part of or supporting the al Qaeda organization or its partners.

19.    Upon information and belief, Petitioner Muhammed has not committed a belligerent act nor directly supported hostilities in aid of enemy forces against the United States.

20.    Upon information and belief, Petitioner Muhammed has not caused or attempted to cause any harm to American personnel or property prior to his detention or espouse any violent act against any American person or property.

7

21.    Upon information and belief, Petitioner Muhammed has not engaged in, aided or abetted, or conspired to commit, acts of international terrorism, or acts in preparation therefore, that have caused, threatened to cause, or have as their aim to cause, injury to or adverse effects on the United States, its citizens, national security, foreign policy, or economy.

22.    Upon information and belief, Petitioner Muhammed has not knowingly harbored one or more individuals who is or were a member of the al Qaeda organization.

23.    Upon information and belief, Petitioner Muhammed has not knowingly harbored one or more individuals who were engaged in, aided or abetted, or conspired to commit, acts of international terrorism, or acts in preparation therefore, that have caused, threatened to cause, or have as their aim to cause, injury to or adverse effects on the United States, its citizens, national security, foreign policy, or economy.

24.    Petitioner Muhammed has not been afforded any procedures that would satisfy his rights under the most fundamental common law notions of due process, the U.S. Constitution, the laws and treaties of the United States, or customary international law.

25.    Upon information and belief, Petitioner Muhammed is not, nor has he ever been, an "enemy combatant" who was "part of or supporting forces hostile to the United States or coalition partners in Afghanistan and who engaged in an armed conflict against the United States there." *Hamdi v. Rumsfeld*, 124 S.Ct. 2633, 2639 (June 28, 2004) (internal quotations omitted).

8

26.    Upon information and belief, Petitioner Muhammed is not, nor has he ever been, an "enemy combatant" as that term is used pursuant to the 7 July 2004 Order of Deputy Secretary of Defense Paul Wolfowitz, establishing the Combatant Status Review Tribunals.

27.    Petitioner Muhammed seeks to enforce his right to a judicial determination by an appropriate and lawful authority that there is a factual and legal basis for Respondents' determination that he is either an "enemy combatant" as defined by the United States Supreme Court in *Hamdi* or an "enemy combatant" as that term is defined and used by the Executive in the Combatant Status Review Tribunals.

28.    Petitioner Muhammed is entitled to test the legality of his continued detention at Guantánamo Bay in the federal courts. *Rasul v. Bush*, 124 S.Ct. 2686, 2698 (2004).

29.    There is no interest of the United States that is served by further detention of Petitioner Muhammed at Guantánamo Bay.

### § III (B).  THE JOINT RESOLUTION ("AUTHORIZATION FOR USE OF MILITARY FORCE")

30.    In the wake of the September 11, 2001 attacks on the United States, the United States, at the direction of President Bush, began a military campaign against the Taliban government, then in power in Afghanistan.

31.    On September 18, 2001, Congress passed and the President signed a joint resolution, the "Authorization for Use of Military Force" (the "AUMF").  The AUMF authorized the President to:

> [U]se all necessary and appropriate force against those nations, organizations, or persons he determines planned, authorized, committed, or aided the terrorist attacks that

9

> occurred on September 11, 2001, or harbored such
> organizations or persons, in order to prevent any future acts
> of international terrorism against the United States by such
> nations, organizations, or persons.

Joint Resolution 23, Authorization for Use of Military Force, Public Law 107-40,

115 Stat. 224 (Sept. 18, 2001)("Joint Resolution" a/k/a the "AUMF").

32.    Upon information and belief, prior to his detention at Guantánamo Bay,

Petitioner Muhammed did not plan, authorize, commit, or aid the terrorist attacks that

occurred on September 11, 2001.

33.    Upon information and belief, prior to his detention at Guantánamo Bay,

Petitioner Muhammed did not belong to an organization that did plan, authorize,

commit, or aid the terrorist attacks that occurred on September 11, 2001.

34.    Upon information and belief, prior to his detention at Guantánamo Bay,

Petitioner Muhammed did not harbor any organization or person who did plan,

authorize, commit, or aid the terrorist attacks that occurred on September 11, 2001.

35.    Petitioner Muhammed is, therefore, not properly detained pursuant to

President Bush's authority as Commander-in-Chief under the Joint Resolution.

### § III (C).  MILITARY ORDER NO. 1.

36.    On November 13, 2001, Respondent Bush issued Military Order No. 1.

*See* attached Exhibit B, Military Order, 66 Fed. Reg. 57,833 (Nov. 13, 2001) ("Military

Order").

37.    The Military Order authorizes Respondent Rumsfeld, *inter alia*, to detain

indefinitely:

> [A]ny individual who is not a United States citizen with respect to whom
> [Respondent Bush] determine[s] from time to time in writing that:

(1)    there is reason to believe that such individual, at the relevant times,

     i.    is or was a member of the organization known as al Qaida;

     ii.   has engaged in, aided or abetted, or conspired to commit, acts of international terrorism, or acts in preparation therefor, that have caused, threaten to cause, or have as their aim to cause, injury to or adverse effects on the United States, its citizens, national security, foreign policy, or economy; or

     iii.  has knowingly harbored one or more individuals described in subparagraphs (i) or (ii) of subsection 2(a)(1) of this order; and

(2)    it is in the interest of the United States that such individual be subject to this order.

Military Order, § 2(a).

38.    The Military Order purports to vest President Bush with the sole discretion to identify individuals who fall within its purview. *See id.*, § 2(a).

39.    The Military Order requires that "[Respondent Rumsfeld] shall take all necessary measures to ensure that any individual subject to this order is detained in accordance with section 3 ...." Military Order, § 2(b).

40.    The Military Order requires that "[a]ny individual subject to this order shall be ... (b) treated humanely, without any adverse distinction based on race, color, religion, gender, birth, wealth, or any similar criteria ...." Military Order, § 3(b).

41.    The Military Order was neither authorized nor directed by Congress, and is, therefore, beyond the scope of the Joint Resolution of September 18, 2001.

42.    The Military Order establishes no standards governing the exercise of President Bush's discretion to identify individuals who fall within its purview.

43.    The Military Order contains no provision for an individual who has been detained to be notified of the charges he may face.

11

44.    The Military Order contains no provision for an individual who has been detained to be notified of his rights under domestic and international law, and provides neither the right to counsel, nor the rights to notice of consular protection or to consular access at the detainee's request.

45.    The Military Order provides no right for an individual who has been detained to appear before a neutral tribunal to review the legality of a detainee's continued detention, contains no provision for recourse to an Article III court, and, moreover, expressly bars review by stating:

> [T]he individual shall not be privileged to seek any remedy or maintain any proceeding, directly or indirectly, or to have any such remedy or proceeding sought on the individual's behalf, in (i) any court of the United States, or any State thereof, (ii) any court of any foreign nation, or (iii) any international tribunal.

*Id.*, § 7(b)(2).

46.    The Military Order was promulgated in the United States and in this judicial district; the decision to detain Petitioner Muhammed was made by Respondents in the United States and in this judicial district; the decision to detain Petitioner Muhammed at Guantánamo was made in the United States and in this judicial district; and the decision to continue detaining Petitioner Muhammed was, and continues to be, made by Respondents in the United States and in this judicial district.

47.    Petitioner Muhammed has not been, and is not being, detained lawfully either pursuant to the Military Order, President Bush's authority as Commander-in-Chief and/or under the laws and usages of war.

12

### § III (D).  PETITIONER MUHAMMED'S CONTINUED DETENTION VIOLATES SECTION 2(a) OF THE MILITARY ORDER

48.     Upon information and belief, no writing otherwise required by the Military Order was issued as to Petitioner Muhammed.

49.     Upon information and belief, Petitioner Muhammed has not been, and is not being, detained lawfully pursuant to the Military Order.

50.     Upon information and belief, Petitioner Muhammed is not, nor has he ever been, an individual who was a member of the organization known as al Qaeda or al Qaida.

51.     Upon information and belief, Petitioner Muhammed has not engaged in, aided or abetted, or conspired to commit, acts of international terrorism, or acts in preparation therefore, that have caused, threatened to cause, or have as their aim to cause, injury to or adverse effects on the United States, its citizens, national security, foreign policy, or economy.

52.     Upon information and belief, Petitioner Muhammed has not knowingly harbored one or more individuals who is or were a member of the al Qaeda organization.

53.     Upon information and belief, Petitioner Muhammed has not knowingly harbored one or more individuals who were engaged in, aided or abetted, or conspired to commit, acts of international terrorism, or acts in preparation therefore, that have caused, threatened to cause, or have as their aim to cause, injury to or adverse effects on the United States, its citizens, national security, foreign policy, or economy.

54.     There is no interest of the United States that is served by further detention of Petitioner Muhammed at Guantánamo Bay.

55.    Petitioner Muhammed is entitled to test the legality of his continued detention under circumstances that violate Section 2(a) of the Military Order in the federal courts. *Rasul v. Bush*, 124 S.Ct. 2686, 2698 (2004).

### § III (E).  THE CONDITIONS OF DETENTION AT GUANTÁNAMO VIOLATE SECTION 3(b) OF THE MILITARY ORDER

56.    Upon information and belief, Petitioner Muhammed is not being treated humanely as required by the Military Order, Section 3(b).

57.    On or about January 11, 2002, the United States military began transporting prisoners captured in Afghanistan to Camp X-Ray at the United States Naval Base in Guantánamo Bay, Cuba.

58.    In April 2002, all prisoners at Guantánamo Bay were transferred to Camp Delta, a more permanent prison facility at Guantánamo Bay.

59.    Certain prisoners at Guantánamo Bay are housed in Camp Delta and Camp Five, an additional maximum-security interrogation and detention center.

60.    The United States military transferred Petitioner Muhammed to Guantánamo Bay, where he has been held ever since, in the custody and control of Respondents.

61.    Since gaining control of Petitioner Muhammed, the United States military has held him virtually *incommunicado*.

62.    Upon information and belief, Petitioner Muhammed has been or will be forced to provide involuntary statements to Respondents' agents, employees, and/or contract employees at Guantánamo Bay.

14

63.   Upon information and belief, Petitioner Muhammed has not appeared before a lawful military or civilian tribunal, and has not been provided access to counsel or the means to contact and secure counsel.

64.   Upon information and belief, Petitioner Muhammed has not been adequately informed of his rights under the United States Constitution, the regulations of the United States Military, the Geneva Conventions, the International Covenant on Civil and Political Rights, the American Declaration on the Rights and Duties of Man, the 1954 Convention Relating to the Status of Refugees or customary international law. Indeed, Respondents have taken the position that Petitioner Muhammed should not be informed of these rights. As a result, Petitioner Muhammed lacks any ability to protect or to vindicate his rights under domestic and international law.

65.   Upon information and belief, Petitioner Muhammed has been treated inhumanely and held under conditions that violate his constitutional and international rights to dignity and freedom from torture and from cruel, inhumane and degrading treatment or punishment.

66.   According to the Department of Defense, even detainees who are adjudged not guilty of all charges by a military commission may nevertheless be kept in detention at Guantánamo Bay indefinitely. *See* Department of Defense Press Background Briefing of July 3, 2003, at http://www.defenselink.mil/transcripts/2003/tr20030703-0323.html (last visited Oct. 11, 2005).

67.   Counsel for Respondents have also consistently maintained that the United States has the right to hold the detained Petitioners under their current conditions until there has been a cessation of hostilities with al Qaeda, which event is

15

apparently to be determined solely by the government. *See, e.g., Response to Petitions for Writ of Habeas Corpus and Motion to Dismiss or For Judgment As A Matter of Law* in *Abdah, et al. v. Bush, et al.*, Civil Action No. 04-CV-1254 (HHK) at 13-19.

68.    Petitioner Muhammed is entitled to test the legality of his continued detention under circumstances that violate Section 3(b) of the Military Order in the federal courts. *Rasul v. Bush*, 124 S.Ct. 2686, 2698 (2004).

### § III (F). THE CONDITIONS OF DETENTION AT GUANTÁNAMO, INCLUDING THE THREAT OF RENDITION, VIOLATE H.R. 1268.

69.    Recently passed H.R. 1268, "Emergency Supplemental Appropriations Act for Defense, the Global War on Terror, and Tsunami Relief, 2005," Public Law No: 109-13, includes Section 1031, entitled: "Prohibition on Torture and Cruel, Inhuman, or Degrading Treatment."

70.    Section 1031 of H.R. 1268, provides:

(a)(1) None of the funds appropriated or otherwise made available by this Act shall be obligated or expended to subject any person in the custody or under the physical control of the United States to torture or cruel, inhuman, or degrading treatment or punishment that is prohibited by the Constitution, laws, or treaties of the United States.

(2) Nothing in this section shall affect the status of any person under the Geneva Conventions or whether any person is entitled to the protections of the Geneva Conventions.

(b) As used in this section –

(1) the term 'torture' has the meaning given that term in section 2340(1) of title 18, United States Code; and

(2) the term 'cruel, inhuman, or degrading treatment or punishment' means the cruel, unusual, and inhumane treatment or punishment prohibited by the fifth amendment, eighth amendment, or fourteenth amendment to the Constitution of the United States.

16

71.    Sections 2340(1)-(3) of Title 18, United States Code, provides:

As used in this chapter –

1.    "'torture'" means an act committed by a person acting under the color of law specifically intended to inflict severe physical or mental pain or suffering (other than pain or suffering incidental to lawful sanctions) upon another person within his custody or physical control;

2.    "'severe mental pain or suffering'" means the prolonged mental harm caused by or resulting from -

(A)    the intentional infliction or threatened infliction of severe physical pain or suffering; the administration or application, or threatened administration or application, of mind-altering substances or other procedures calculated to disrupt profoundly the senses or the personality;

(B)    the threat of imminent death; or

(C)    the threat that another person will imminently be subjected to death, severe physical pain or suffering, or the administration or application of mind-altering substances or other procedures calculated to disrupt profoundly the senses or personality; and

(2)    "'United States'" includes all areas under the jurisdiction of the United States including any of the places described in sections 5 and 7 of this title and section 46501(2) of title 49.

72.    Upon information and belief, detainees have been and continue to be treated inhumanely and held under conditions that violate their constitutional and international rights to dignity and freedom from torture and from cruel, inhumane and degrading treatment or punishment, all of which occur in violation of Section 1031.

73.    Upon information or belief, during interrogations, detainees have been threatened with rendition or transfer to countries that routinely practice torture.

17

### SECTION IV
### CAUSES OF ACTION

#### FIRST CLAIM FOR RELIEF
#### (THE MILITARY ORDER IS INVALID)

74.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

75.    The Military Order authorizes detainees to be confined indefinitely without charges.

76.    The Military Order authorizes indefinite and unreviewable detention, based on nothing more than President Bush's written determination that an individual is subject to its terms.

77.    To the extent that Petitioner Muhammed's detention purports to be authorized by the Military Order, that Order violates the Fifth Amendment on its face and as applied to Petitioner.

78.    Further, the Military Order exceeds the Executive's authority under Article II of the United States Constitution and is *ultra vires* and void on its face.

79.    Accordingly, Petitioner Muhammed is entitled to declaratory and injunctive relief as well as any other relief the court may deem appropriate.

#### SECOND CLAIM FOR RELIEF
#### (VIOLATION OF THE MILITARY ORDER)

80.    Petitioners incorporate by reference paragraphs 1 – 73 as if set forth fully herein.

81.    To the extent the Military Order is not facially *ultra vires* or otherwise invalid, the detention of Petitioner Muhammed continues in violation of the express provisions of the Military Order.

18

82.    The unlawful acts of Respondents, as detailed above, violate the Military Order, as they constitute illegal and inhumane treatment in violation of Section 3(b) of that order.

83.    Accordingly, Petitioner Muhammed is entitled to a writ of habeas corpus, and to necessarily related declaratory and injunctive relief, as well as any other relief the court may deem appropriate.

### THIRD CLAIM FOR RELIEF
### (VIOLATION OF COMMON LAW DUE PROCESS AND DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES)

84.    Petitioners incorporate by reference paragraphs 1 – 73 as if set forth fully herein.

85.    By the actions described above, Respondents, acting under color of law, have violated and continue to violate common law principles of due process as well as the Due Process Clause of the Fifth Amendment to the Constitution of the United States.  President Bush has ordered the prolonged, indefinite, and arbitrary detention of individuals, including Petitioner Muhammed, without due process of law, and the remaining Respondents have implemented those orders.  Respondents' actions deny Petitioner Muhammed the process accorded to persons seized and detained by the United States military in times of armed conflict as established by, *inter alia*, the Uniform Code of Military Justice, Army Regulation 190 - 8, Articles 3 and 5 of the Third and Fourth Geneva Conventions, and customary international law as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

86.    Further, by the actions described above, Respondents, acting under color of law, have violated and continue to violate the right of Petitioner Muhammed to be free from unlawful conditions of confinement, in violation of the Due Process Clause of the Fifth Amendment to the Constitution of the United States.

87.    Accordingly, Petitioner Muhammed is entitled to a writ of habeas corpus, and to necessarily related declaratory and injunctive relief, as well as any other relief the court may deem appropriate.

### FOURTH CLAIM FOR RELIEF
### (VIOLATION OF GENEVA CONVENTIONS:
### ARBITRARY DENIAL OF DUE PROCESS AND INHUMANE TREATMENT)

88.    Petitioners incorporate by reference paragraphs 1 – 73 as if set forth fully herein.

89.    By the actions described above, Respondents, acting under color of law, have denied and continue to deny Petitioner Muhammed the process accorded to persons seized and detained by the United States military in times of armed conflict as established by specific provisions of the Third and Fourth Geneva Conventions. *See generally*, Geneva Convention Relative to the Treatment of Prisoners of War, Aug. 12, 1949, 6 U.S.T. 3316; Geneva Convention Relative to the Protection of Civilians in Time of War, Aug. 12, 1949, 6 U.S.T. 3516 [*hereinafter* Geneva Conventions].

90.    Violations of the Geneva Conventions are direct treaty violations, are violations of customary international law, and constitute an enforceable claim under 28 U.S.C. § 2241 (c)(3).

20

91.    Respondents are liable for this conduct described above, insofar as they set the conditions, directly and/or indirectly facilitated, ordered, acquiesced, confirmed, ratified, and/or conspired to violate the Geneva Conventions.

92.    Accordingly, Petitioner Muhammed is entitled to a writ of habeas corpus and to necessarily related declaratory and injunctive relief, as well as any other relief the court may deem appropriate.

**FIFTH CLAIM FOR RELIEF**
**(VIOLATION OF INTERNATIONAL HUMANITARIAN AND HUMAN RIGHTS LAW:**
**ARBITRARY DENIAL OF DUE PROCESS AND INHUMANE TREATMENT)**

93.    Petitioners incorporate by reference paragraphs 1 – 73 as if set forth fully herein.

94.    By the actions described above, Respondents have denied and continue to deny Petitioner Muhammed the due process accorded to persons seized and detained by the United States military in times of armed conflict as establish by customary international humanitarian and human rights law as reflected, expressed, and defined in multilateral treaties and other international instruments and domestic judicial decisions, and other authorities. *See, e.g.*, Convention Against Torture and Other Cruel, Inhumane or Degrading Treatment or Punishment, G.A. Res. 39/46, Annex, 39 U.N. GAOR Supp. No. 51, U.N. Doc. A/39/51 (1984) [*hereinafter* Convention Against Torture].

95.    Accordingly, Petitioner Muhammed is entitled to a writ of habeas corpus and to necessarily related declaratory and injunctive relief, as well as any other relief the court may deem appropriate.

21

### SIXTH CLAIM FOR RELIEF
### (VIOLATION OF ALIEN TORT STATUTE AND THE MILITARY ORDER:
### ARBITRARY ARREST AND PROLONGED ARBITRARY DETENTION
### (INHUMANE TREATMENT))

96.    Petitioners incorporate by reference paragraphs 1 – 73 as if set forth fully herein.

97.    The acts described herein constitute arbitrary arrest and detention of Petitioner Muhammed in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting arbitrary detention as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

98.    Respondents are liable for this conduct in that they directed, ordered, confirmed, ratified, and/or conspired together and with others to bring about the arbitrary arrest and prolonged arbitrary detention of Petitioner Muhammed in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting arbitrary arrest and prolonged arbitrary detention as reflected, expressed, and defined in multilateral treaties and other international instruments, including the Geneva Conventions and Convention Against Torture, international and domestic judicial decisions, and other authorities.

99.    These unlawful acts of Respondents also violate the Military Order, as they constitute illegal and inhumane treatment in violation of Section 3(b) of that order.

100.    As a result of Respondents' unlawful conduct, Petitioner Muhammed has been and is deprived of his freedom, separated from his family, and forced to suffer severe physical and mental abuse, and is therefore entitled to a writ of habeas corpus,

22

and to necessarily related declaratory and injunctive relief, and such other relief as the court may deem appropriate.

## SEVENTH CLAIM FOR RELIEF
### (VIOLATION OF ARTICLE II OF THE UNITED STATES CONSTITUTION: UNLAWFUL DETENTION)

101.    Petitioners incorporate by reference paragraphs 1 – 73 as if set forth fully herein.

102.    Upon information and belief, Petitioner Muhammed is not, nor has he ever been, an enemy alien, lawful or unlawful belligerent, or combatant of any kind. The Executive lacks the authority to order or direct military officials to detain civilians who are seized far from the theater of war or occupied territory or who were not "carrying a weapon against American troops on a foreign battlefield." *Hamdi v. Rumsfeld*, 124 S.Ct. 2633, 2642 n.1 (2004).

103.    By the actions described above, President Bush has exceeded and continues to exceed the Executive's authority under Article II of the United States Constitution by authorizing, ordering and directing that military officials seize Petitioner Muhammed and transfer him to military detention, and by authorizing and ordering their continued military detention at Guantánamo Bay. All of the Respondents acted and continue to act without lawful authority by directing, ordering, and/or supervising the seizure and military detention of Petitioner Muhammed.

104.    The military seizure and detention of Petitioner Muhammed by the Respondents is *ultra vires* and illegal because it violates Article II of the United States Constitution. To the extent that the Executive asserts that Petitioner's detention is

23

authorized by the Military Order, that Order exceeds the Executive's authority under Article II and is *ultra vires* and void on its face and as applied to Petitioner.

105.    To the extent that Respondents assert that their authority to detain Petitioner Muhammed derives from a source other than the Military Order, including without limitation the Executive's inherent authority to conduct foreign affairs or to serve as Commander-in-Chief of the U.S. Armed Forces, whether from Article II of the Constitution or otherwise, Respondents lack that authority as a matter of fact and law.

106.    Accordingly, Petitioner Muhammed is entitled to a writ of habeas corpus and to necessarily related declaratory and injunctive relief, as well as any other relief the court may deem appropriate.

### EIGHTH CLAIM FOR RELIEF
#### (VIOLATION OF THE APA AND THE MILITARY ORDER: ARBITRARY AND CAPRICIOUS UNLAWFUL DETENTION)

107.    Petitioners incorporate by reference paragraphs 1 – 76 as if set forth fully herein.

108.    Army Regulation 190 - 8 prohibits the detention of civilians who were seized away from the field of battle or outside occupied territory or who were not engaged in combat against the United States. *See, e.g.,* Army Regulation. 190-8 at 1-6(g) ("Persons who have been determined by a competent tribunal not to be entitled to prisoner of war status may not be executed, imprisoned, or otherwise penalized without further proceedings to determine what acts they have committed and what penalty should be imposed.").

109.    By arbitrarily and capriciously detaining Petitioner Muhammed in military custody for upwards of three years in the manner described above, Respondents have

acted and continue to act *ultra vires* and unlawfully in violation of the Administrative

Procedures Act, 5 U.S.C. § 706(2).

110.    These unlawful acts of Respondents also violate the Military Order, as

they constitute illegal and inhumane treatment in violation of Section 3(b) of that order.

111.    Accordingly, Petitioner Muhammed is entitled to a writ of habeas corpus,

and to necessarily related declaratory and injunctive relief, as well as any other relief

the court may deem appropriate.

### NINTH CLAIM FOR RELIEF
### (VIOLATION OF THE APA AND THE MILITARY ORDER:
### ARBITRARY AND CAPRICIOUS DENIAL OF DUE PROCESS)

112.    Petitioners incorporate by reference paragraphs 1 – 76 as if set forth fully

herein.

113.    By the actions described above, Respondents, acting under color of law,

have arbitrarily and capriciously denied and continue to deny Petitioner Muhammed the

process accorded to persons seized and detained by the United States military in times

of armed conflict as established by Army Regulation 190-8 in violation of the

Administrative Procedures Act, 5 U.S.C. § 706(2).

114.    These unlawful acts of Respondents also violate the Military Order, as

they constitute illegal and inhumane treatment in violation of Section 3(b) of that order.

115.    Accordingly, Petitioner Muhammed is entitled to a writ of habeas corpus

and to necessarily related declaratory and injunctive relief, as well as any other relief

the court may deem appropriate.

### TENTH CLAIM FOR RELIEF
**(VIOLATION OF THE RIGHT TO COUNSEL AND ACCESS TO THE COURTS)**

116.    Petitioners incorporate by reference paragraphs 1 – 76 as if set forth fully herein.

117.    Respondents, purportedly acting from a concern for national security, consistently have contrived to intrude upon Petitioner Muhammed's right to consult with counsel by conditioning counsel's access to Petitioner on unreasonable terms, including classification/declassification procedures, all in violation of Petitioner Muhammed's attorney-client privilege, his work product privilege, and the Fifth and Sixth Amendments to the U.S. Constitution.

118.    Accordingly, Petitioner Muhammed is entitled to a writ of habeas corpus and to necessarily related declaratory and injunctive relief, as well as any other relief the court may deem appropriate.

### ELEVENTH CLAIM FOR RELIEF
**(VIOLATION OF CONVENTION AGAINST TORTURE AND CONVENTION RELATING TO THE STATUS OF REFUGEES AND THE MILITARY ORDER: RENDITION)**

119.    Petitioners incorporate by reference paragraphs 1 – 76 as if set forth fully herein.

120.    Upon information and belief, Petitioner is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture. The transfer of the Petitioner to a country that creates a foreseeable and direct risk that he will be subjected to torture constitutes a direct violation of Petitioner's rights under the Convention Against Torture and the 1954 Convention Relating to the Status of Refugees, 19 U.S.T. 6259, 189 U.N.T.S. 150 *entered into force* Apr. 22, 1954.

121.  Such rendition would violate the Military Order, as it would constitute illegal and inhumane treatment in violation of Section 3(b) of that order and would otherwise be illegal and *ultra vires.*

122.  Accordingly, Petitioner Muhammed is entitled to declaratory and injunctive relief, as well as any other relief the court may deem appropriate.

### SECTION V
### PRAYER FOR RELIEF

WHEREFORE, Petitioners pray for relief as follows:

1.  Designate Jamaal Kiyemba as Next Friend of Muhammed;

2.  Grant the Writ of Habeas Corpus and order Respondents to release Petitioner Muhammed from his current unlawful detention;

3.  Order and declare that the Military Order of November 13, 2001 is *ultra vires* and unlawful in violation of Article II of the United States Constitution, the Fifth Amendment to the U.S. Constitution, the Uniform Code of Military Justice, the Administrative Procedures Act, 5 U.S.C. § 702, the treaties of the United States and customary international law;

4.  Order and declare that the prolonged, indefinite, and restrictive detention of Petitioner Muhammed is in violation of the Military Order of November 13, 2001;

5.  Order and declare that the prolonged, indefinite, and restrictive detention of Petitioner Muhammed without due process is arbitrary and unlawful and a deprivation of liberty without due process in violation of common law principles of due process, the Due Process Clause of the Fifth Amendment to the United States Constitution, the regulations of the United States military, the treaties of the United States, and customary international humanitarian law;

27

6.    Order that Petitioner Muhammed be brought before the Court or before a Magistrate Judge assigned by the Court to conduct proceedings under the supervision of the Court to vindicate his rights;

7.    Order that Petitioner Muhammed cannot be transferred to any other country without the specific written agreement of Petitioner and Petitioner's counsel while this action is pending;

8.    Order that Petitioner Muhammed cannot be delivered, returned, or rendered to a country where there is a foreseeable and imminent risk that Petitioner will be subject to torture;

9.    Order Respondents to allow counsel to meet and confer with Petitioner Muhammed, in private and unmonitored attorney-client conversations;

10.    Order Respondents to cease all interrogations of Petitioner Muhammed, direct or indirect, while this litigation is pending;

11.    Order Respondents to cease all acts of inhumane treatment of Petitioner Muhammed; and

12.    Grant such other relief as the Court may deem necessary and appropriate to protect Petitioner's rights under the common law, the United States Constitution, federal statutory law, and international law.

Dated this _17th_ day of _October_, 2005.

Respectfully submitted,

Counsel for Petitioners

28

Donald A. Degnan
(Colorado State Bar # 20774)
Holland & Hart LLP
One Boulder Plaza
1800 Broadway, Suite 300
Boulder, CO 80302
Tel: (303) 473-2700
Facsimile: (303) 473-2720

William E. Murane
(Colorado State Bar # 2676)
Christopher L. Thomas
(Colorado State Bar # 35317)
Danielle R. Voorhees
(Colorado State Bar # 35929)
Christina Gomez
(Colorado State Bar # 36026)
J. Triplett Mackintosh
(Colorado State Bar # 22359)
Hamid M. Khan
(Colorado State Bar # 34139)
Holland & Hart LLP
555 17th Street, Suite 3200
Denver, CO 80202
Tel: (303) 295-8000
Facsimile: (303) 295-8261

Dean B. Arnold
(Idaho State Bar # 6814)
Holland & Hart LLP
U.S. Bank Plaza,
101 S. Capitol Blvd., Ste. 1400
Boise, ID 83702
Tel.: (208) 383-3914
Facsimile: (866) 851-8334

Of Counsel
Barbara J. Olshansky
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway
New York, NY 10012
Tel.: (212) 614-6439

29

## **CERTIFICATION OF REPRESENTATION WITHOUT COMPENSATION**

Counsel for Petitioner certify, pursuant to L. Cv. R. 83.2(g), that they are representing Petitioner without compensation. Counsel for Petitioner also certify, pursuant to L. Cv. R. 83.2(j), that they have personal familiarity with Local Rules of this Court.

Dated this _17th_ day of _October_____, 2005.

_____
Donald A. Degnan
Holland & Hart LLP
One Boulder Plaza
1800 Broadway, Suite 300
Boulder, CO 80302
Tel: (303) 473-2700
Facsimile: (303) 473-2720

William E. Murane
Christopher L. Thomas
Danielle R. Voorhees
Christina Gomez
J. Triplett Mackintosh
Hamid M. Khan
Holland & Hart LLP
555 17th Street, Suite 3200
Denver, CO  80202
Tel: (303) 295-8000
Facsimile: (303) 295-8261

Dean B. Arnold
Holland & Hart LLP
U.S. Bank Plaza,
101 S. Capitol Blvd., Ste. 1400
Boise, ID 83702
Tel.: (208) 383-3914
Facsimile: (866) 851-8334

Of Counsel
Barbara J. Olshansky
Tina Monshipour Foster (NY No. TF5556)
Gitanjali S. Gutierrez (NY No. GG1234)
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway
New York, NY 10012
Tel.: (212) 614-6439

3393530_7.DOC