ORAL ARGUMENT TO BE SCHEDULED

Nos. 05-5064, 05-5095 through 05-5116

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

KHALED A.F. AL ODAH, et al.,

Plaintiffs-Petitioners-Appellees/Cross-Appellants

v.

UNITED STATES OF AMERICA, et al.,

Defendants-Respondents-Appellants/Cross-Appellees

ON CONSOLIDATED APPEALS FROM THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

## BRIEF FOR THE GUANTANAMO DETAINEES

BARBARA J. OLSHANSKY
CENTER FOR CONSTITUTIONAL
  RIGHTS
666 BROADWAY
NEW YORK, NY 10012
TELEPHONE: 212-614-6439

JOE MARGULIES
MACARTHUR JUSTICE CENTER
UNIVERSITY OF CHICAGO
  LAW SCHOOL
1111 EAST 60TH STREET
CHICAGO, IL 60637
TELEPHONE: 773-702-9560

THOMAS B. WILNER
NEIL H. KOSLOWE
KRISTINE A. HUSKEY
JARED A. GOLDSTEIN

SHEARMAN & STERLING LLP
801 PENNSYLVANIA AVENUE, N.W.
WASHINGTON, D.C. 20004
TELEPHONE: 202-508-8000

*Lead Counsel for the Guantanamo
Detainees*



~~SECRET~~

Guantanamo "no less than American citizens" have the "right to judicial review of the legality of Executive detention" imposed upon them and remanded the case to the district court "to consider in the first instance the merits of petitioners' claims." *Rasul*, 124 S. Ct. at 2693, 2696, 2699. Rather than allowing the district court to proceed with that review, the government moved to dismiss, arguing yet again that these cases must be dismissed because the Detainees have no constitutional due process rights that can be enforced in the courts. The government's argument assumes that the Supreme Court's decision to review and reverse this Court's ruling was a meaningless exercise and that the right recognized in *Rasul* is an empty one. The government is mistaken.

> A. **The Supreme Court Explicitly Held That the Guantanamo Detainees Have a Right Under the Federal Habeas Statute to Judicial Review of the Legality of Their Detention.**

Even were the government correct that *constitutional* protections do not extend to the Detainees, there is no doubt, and the government concedes that the protections of the federal habeas *statute* extend to them; *see* Gov't Br. 11, as *Rasul* holds, they have a "*statutory* entitlement to habeas review" of the executive detention imposed upon them. 124 S. Ct. at 2694. That means not only that the Detainees may go to court, but also that the courts have the obligation to review the government's asserted justifications for the detentions to ensure that the Detainees have not been deprived of their liberty without sufficient cause.

17



~~SECRET~~

Relief under the habeas statute for a prisoner held in federal custody does not depend on showing a violation of the Constitution. As the Supreme Court has pointed out, there is "no suggestion that habeas relief in cases involving Executive detention was only available for constitutional error." *INS v. St. Cyr*, 533 U.S. 289, 302-03 (2001). Although one provision of the habeas statute, 28 U.S.C. § 2241(c)(3), does provide a cause of action for persons held "in custody in violation of the Constitution or laws or treaties of the United States," that provision was added to the habeas statute in 1867, after the Civil War, to extend federal court protection to prisoners held in state custody in violation of federal law. *Rasul*, 124 S. Ct. at 2691-92. The original habeas provision, found in 28 U.S.C. § 2241(c)(1), entitles anyone held "in custody under or by color of the authority of the United States" to obtain judicial review of the legality of the detention. That provision derives not from the Constitution, but from the common law. *Id.*

As the Supreme Court pointed out in *Rasul*, the statutory entitlement to judicial review of federal detentions is part of our common law heritage, "throwing its root deep into the genius of our common law." 124 S. Ct. at 2692. That provision was adopted in the First Judiciary Act enacted by the First Congress in 1789—prior to the adoption of the Fifth Amendment and the Bill of Rights. Section 2241(c)(1) embodies the common law protection of individual liberty—the right to independent judicial review of executive detention to ensure that no person

18



SECRET

is deprived of liberty by authority of the federal government without the protections of due process of law *developed under the common law.*[9]

The government seems to believe that due process is a concept that was born suddenly in the Fifth Amendment and that, because the Detainees purportedly lack rights under that amendment, they have no grounds for habeas relief. That clearly is not the case. Long before the Fifth Amendment was adopted, the common law protected against executive detention imposed without due process, and habeas corpus existed as a means to enforce the common law right to due process. As Justice Scalia recently explained, common law protections against executive detentions, recognized by Blackstone and our Constitutional Founders, were built upon two central ideas: "due process as the right secured, and habeas corpus as the instrument by which due process could be insisted upon." *Hamdi v. Rumsfeld*, 124 S. Ct. 2633, 2661 (2004) (Scalia, J., dissenting).[10] The Due Process Clause of the Fifth Amendment embodies long-established "common law procedures traditionally deemed necessary before depriving a person of life, liberty, or

---

[9] As Alexander Hamilton stated in Federalist No. 84, quoting Blackstone, "the practice of arbitrary imprisonments, [has] been, in all ages, [one of] the favorite and most formidable instruments of tyranny," and habeas corpus is the "remedy for this fatal evil." Although it has evolved over the past centuries, "[a]t its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *Rasul*, 124 S. Ct. at 2692.



19

**SECRET**

property," *id.*, but the right to be free of executive detention imposed without due process has long been guaranteed by habeas and does not depend on the Fifth Amendment. On the contrary, habeas is a common law right that predates the Constitution, and the federal statutory provision protecting that right predates the Fifth Amendment.[11]

Habeas corpus, as originally enacted in the Judiciary Act of 1789 and as it still exists under Section 2241(c)(1), guarantees to every person detained under federal authority to whom the writ extends the right to judicial review of the legality of the detention. As Chief Justice Marshall explained:

> [H]abeas corpus is a high prerogative writ, known to the common law, the great object of which is the liberation of those who may be imprisoned without sufficient cause. It is in the nature of a writ of error, to examine the legality of the commitment.

*Ex parte Watkins*, 28 U.S. 193, 202 (1830).

Under habeas procedures as they existed when Congress enacted what is now Section 2241(c)(1), a prisoner initiated a habeas action by alleging simply that he was under executive detention without cause. If the executive failed to offer

---

[10]   See also *Davidson v. New Orleans*, 96 U.S. 97, 101 (1877); *John Den v. The Hoboken Land and Improvement Company*, 59 U.S. 272, 276 (1855).

[11]   It is a writ antecedent not only to the Constitution but "antecedent to statute," *Rasul*, 124 S. Ct. at 2692; see also *Ex parte Bollman*, 8 U.S. (4 Cranch) 75, 93-94 (1807) ("[F]or the meaning of the term habeas corpus, resort may unquestionably be had to the common law.") (Marshall, C.J.).

**SECRET**

SECRET

sufficient justification for the detention, the court was obligated to grant the writ and free the petitioner. *See* 1 William Blackstone, Commentaries 132-33 (1765). The executive could seek to prevent the issuance of the writ by submitting a return, which endeavored to explain the legal and factual basis for the detention.[12] A court could not simply take the government at its word, however, but engaged in a searching review of the factual and legal validity of the return.[13]

Chief Justice Marshall demonstrated what habeas review requires in the *Bollman* case, in which the Court sat for five days and "fully examined and attentively considered" on an item-by-item basis "the testimony on which [the prisoners] where committed." 8 U.S. (Cranch) at 125. Finding the government's factual proffer insufficient, the Court ordered the prisoners discharged. *Id.* at 136-37. Nowhere in its opinion did the Court mention the Constitution; as the right to habeas relief did not then and does not now depend on proving a violation of the Constitution. The standard then—as now—is that the government must come

---

[12]   *See, e.g.*, Habeas Corpus Act of 1640 § VI; Blackstone, *supra*.

[13]   *See, e.g.*, *Goldswain's Case*, 96 Eng. Rep. 711 (1778); *Rex v. Turlington*, 97 Eng. Rep. 741 (1761); *Bushell's Case*, 124 Eng. Rep. 1006 (1670); *Hodges v. Humkin*, 80 Eng. Rep. 1015 (1613); *Gardener's Case*, 78 Eng. Rep. 1048 (1600).

SECRET

~~SECRET~~

forward and demonstrate that it has not deprived the petitioner of liberty without due process of law.[14]

Thus, even if the Court were to find that the Detainees are not entitled to the protections of the Fifth Amendment, they nonetheless have a statutory right to challenge the legality of their detentions, which means they are entitled to judicial review of the facts and circumstances surrounding their detentions to determine if their detentions are, in the words of the Habeas Corpus Act of 1640, "just and legal or not." 17 Car. I. cap. 10, § VI.

### B. The Detainees Are Entitled to the Protections of the Due Process Clause.

The government argues that the Detainees' due process claims under the Fifth Amendment must be dismissed because "[i]t is well established that the Fifth Amendment (including its Due Process Clause) does not apply extraterritorially to aliens." Gov't Br. 15. The government then devotes fifteen pages of its brief

---

[14] As the Supreme Court has emphasized, when habeas jurisdiction exists, the petitioners are entitled to consideration of their claims on the merits. See *Harris v. Nelson*, 394 U.S. 286, 298 (1969) ("Petitioners in habeas corpus proceedings . . . are entitled to careful consideration and plenary processing of their claims including full opportunity for the presentation of the relevant facts"); *Frank v. Mangum*, 237 U.S. 309, 332 (1915) ("[I]t is open to the courts of the United States, upon an application of a writ for habeas corpus, to look beyond forms and inquire into the very substance of the matter"); *see also id.* at 346 (Holmes, J., dissenting) ("But habeas corpus cuts through all forms and goes to the very tissue of the structure. It comes in from outside, not in subordination to the proceedings, and although every form may have been preserved, opens the inquiry whether they have been more than an empty shell.").

